UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIELLE OOM, et al.,

       Plaintiffs,

                             CASE NO. 1:16-cv-257

v.

                             HON. PAUL L. MALONEY

THE MICHAELS COMPANIES INC., et al.,

       Defendants.

_____/

## OPINION

Plaintiffs Oom and Spofford allege that they paid for custom-framing services for 25 pieces of artwork from a Michaels store in Holland, Michigan, but received lesser-value framing that damaged their art.  Plaintiffs bring an action in diversity under 28 U.S.C. § 1332(d) against The Michaels Companies Inc. ("TMCI"), Michaels Stores Inc. ("Michaels"), which is a wholly-owned subsidiary of TMCI, and Artistree, a wholly-owned subsidiary of Michaels.  Plaintiffs raise the following causes of action: (1) violations of state consumer protection statutes; (2) violations of the Uniform Deceptive Trade Practices Act (as codified by state staututes); (3) violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; (4) violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*; (5) fraud and misrepresentation; (6) unjust enrichment; (7) negligence; (8) breach of express warranty; and (9) breach of implied warranty, Mich. Comp. Laws § 440.2314 *et seq.*  Plaintiffs allege that they are part of a class of persons—either in Michigan ("Michigan class") or the United States ("Nationwide Class")—"who purchased custom framing products, specifically preservation mounting and/or archival tape

mounting from Defendants' store locations and who did not receive preservation mounting and/or archival tape mounting."  (Am. Compl. ¶ 66, ECF No. 10, PageID.78.)

Defendants have filed a motion to dismiss for failure to state a claim (ECF No. 16), a motion to strike class allegations (ECF No. 18), and Defendant TMCI has filed a motion to dismiss for lack of personal jurisdiction (ECF No. 20).  Plaintiffs have responded to each motion (ECF Nos. 25, 26, 27), and Defendants have filed replies (ECF No. 28, 29, 30).  Upon careful review of the record, the Court has decided that the motions can be resolved without oral argument.  *See* W.D. Mich. LCivR 7.3(d).  For the reasons that follow, Defendants' motion to strike class allegations (ECF No. 18) is granted.

## I.

Michaels is an arts-and-craft store chain that offers framing products and services at its stores, and advertises these products and services to consumers. (Am. Compl. ¶ 5, ECF No. 10, PageID.64.)  The advertisements include a "promise of expertise, inspired design and archival quality materials" and certified framing experts "skilled in state-of-the-art preservation techniques." (*Id.* at ¶¶ 7-8, PageID.65.)  Artistree supplies custom and specialty-framing materials used in Michaels stores throughout the country.  (*Id.* at ¶ 11.)  Michaels advertises Artistree as its "wholly-owned manufacturing subsidiary, [which] supplies high quality custom and specialty framing merchandise, including prints and precut mats to our Michaels and Aaron Brothers stores." (*Id.* at ¶ 13, PageID.66.)

Michaels offers several framing options; the relevant options include: (1) preservation mounting; (2) tape mounting; and (3) dry mounting.  Preservation mounting is the most-expensive option.  Michaels advertises that its "preservation-grade finishing touches include museum-quality

2

archival mats and UV-blocking glass that will protect your precious pieces of art." (*Id.* at ¶ 10, PageID.65.)  Preservation mounting involves framing the artwork in a stable environment to minimize risks of deterioration and environmental factors. (*Id.* at ¶ 16, PageID.66-67.) There are widely-accepted industry specifications for materials and techniques used in preservation mounting. (*Id.*)  Tape mounting involves the use of paper mounting and hinging tape to mount artwork.  (*Id.* at ¶ 18.)  Dry mounting involves permanently attaching the artwork to the mount board and is irreversible, so it is not considered a preservation technique.  (*Id.* at ¶ 17.)

Plaintiffs allege that from January 2013 through June 2015, they brought 27 pieces of artwork to the Michaels store in Holland, Michigan, for custom preservation framing.  Plaintiffs contend that they "relayed to Defendants' certified framing expert that preservation of the artwork was of utmost importance to Plaintiffs," and that they wanted to "preserve the pieces in perfect condition." (*Id.* at ¶ 32, ECF No. 10, PageID.69-70.)  Plaintiffs assert that they were told by Michaels employees that, if they paid for preservation mounting, they would receive preservation mounting.  (*Id.* at ¶¶ 34, 37-42, PageID.70-71.)  In total, Plaintiffs paid $2,459.60 for preservation-framing services.  (*Id.* at ¶ 43.)  But Plaintiffs allege that they did not receive the preservation mounting that they paid for; instead, they received framing of lesser value.  They assert that 25 of their pieces were tape mounted with inferior adhesive tape that could not be removed from the artwork, which caused permanent damage and diminished the artwork's value.  (*Id.* at ¶¶ 46-47, PageID.72.)

Plaintiffs contend that pamphlets in the Holland store advertised employee skills in state-of-the-art preservation techniques, and that they relied upon the price listed in those pamphlets. Plaintiffs allege that "Michaels warranted skilled certified framing experts who would use 'archival photo corners' and 'museum-quality archival mats' supplied by Defendants' wholly-owned

3

subsidiary, Artistree." (*Id.* at ¶ 51, PageID.73.) Plaintiffs also assert that the Holland store's framing manager, Katie, explained that the Holland store and other Michaels stores received multiple shipments of inferior adhesive tape from December 2014 through August 2015. (*Id.* at ¶ 49, PageID.72-73.) The amended complaint also includes online comments from an art collector community resource forum where one user from South Carolina complained of Michaels' use of masking tape in 2007, and another user commented in 2016 that Michaels always uses tape per store policy. (*Id.* at ¶ 54, 55, PageID.73-74.)

## II.

Defendants move to strike the class allegations under Federal Rules of Civil Procedure 12(f) and 23.[1]  Rule 12(f) provides that "[t]he [C]ourt may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A Rule 12(f) motion is designed "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Kennedy v. Cleveland*, 797 F. 2d 297, 305 (6th Cir. 1986).

A court may strike class-action allegations before a motion for class certification if the complaint demonstrates that the requirements for maintaining a class action cannot be met and discovery or factual development would not "alter the central defect in th[e] class claim."  *See e.g., Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (noting "[t]hat the motion

---

[1] "Rule 23's requirements must be interpreted in keeping with Article III constraints[.]"  *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997).  Although Defendants also raise arguments that Plaintiffs lack standing, "[t]he class certification issues are dispositive, [and] because their resolution here is logically antecedent to the existence of any Article III issues, it is appropriate to reach them first."  *Id.* at 612 (internal citations and quotations omitted); *cf. Arizonans for Official English v. Arizona*, 520 U.S. 43, 66-67 (1997) (declining to definitively resolve the question of whether petitioners had standing because mootness issue was dispositive of the case).

to strike came before the plaintiffs had filed a motion to certify the class does not by itself make the court's decision reversibly premature" and affirming the district court's grant because it "cannot see how discovery or for that matter more time would have helped [the plaintiffs]"); *Sherrod v. Enigma Software Grp. USA, LLC*, No. 2:13-cv-36, 2016 WL 2597, at *1 (S.D. Ohio Jan. 4, 2016); *Wright v. State Farm Fire & Cas. Co.*, No. 09-15055, 2015 WL 1737386, at *1 (E.D. Mich. Apr. 16, 2015). When a defendant moves "to strike class action allegations on the basis that class certification is precluded as a matter of law, the defendant bears the burden of establishing that the plaintiff will be unable to demonstrate facts supporting certification, even after discovery and the creation of a full factual record." *Jimenez v. Allstate Indem. Co.*, No. 07-14494, 2010 WL 3623176, at *3 (E.D. Mich. Sept. 15, 2010). "If a defendant can clearly show that a class definition is legally impermissible, fairness and efficiency require that the Court address the issue in response to a properly filed motion." *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 538 (E.D. Mich. 2015); *see also Green v. Liberty Ins. Corp.*, No. 15-10434, 2016 U.S. Dist. LEXIS 42602, at *4-5 (E.D. Mich. Mar. 30, 2016).

"'When the defendant challenges class certification based solely on the allegations in the complaint, *the standard is the same as applied in deciding a motion to dismiss under Rule 12(b)(6)*.'" *Green*, 2016 U.S. Dist. LEXIS 42602, at *5 (quoting *Jimenez*, 2010 WL 3623176, at *3) (emphasis in original). As such, the complaint must contain "[f]actual allegations . . . enough to raise a right to [class certification] above the speculative level . . . on the assumption that all the allegations in the complaint are true[.]" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The court views the complaint in the light most favorable to the plaintiffs and takes all wellpleaded (sic) factual allegations as true." *Id.* (citing *Tackett v. M&G Polymers, USA, LLC*, 561.

F.3d 478, 488 (6th Cir. 2009) and *Carrier Corp. v. Outokumu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of [class certification], the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (alterations in original).

"The substantive analysis, therefore, 'must begin and end with a rigorous analysis into whether the prerequisites of Rule 23 are met." *Id.* (quoting *Jimenez*, 2010 WL 3623176, at *3) (internal citations omitted).  Rule 23(a) sets forth the following requirements for class certification:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  A plaintiff seeking class certification must also satisfy one of the three subsections of Rule 23(b).  Here, Plaintiffs seek certification under Rule 23(b)(3), which permits certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required."  *Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011).  And failure to satisfy the requirements of Rule 23(a) or (b) "dooms the

class." *Pilgrim*, 660 F.3d at 946.

## III.

Plaintiffs' proposed class consists of "[a]ll persons residing in Michigan ('Michigan Class') and/or the United States ('Nationwide Class') who purchased custom framing products, specifically preservation mounting and/or archival tape mounting from Defendants' store locations and who did not receive preservation mounting and/or archival tape mounting." (Am. Compl. ¶ 66, ECF No. 10, PageID.78.) Defendants argue that the Court should strike Plaintiffs' class claims because Plaintiffs allege an unascertainable, fail-safe class. Plaintiffs respond that, through discovery, they can ascertain class members, and that they have not proposed a fail-safe class. Defendants also argue that Plaintiffs' complaint does not contain well-pleaded facts to satisfy Rule 23's typicality, commonality, and predominance requirements. Plaintiffs argue that the complaint satisfies all of Rule 23's requirements.

### A. Ascertainability

Nothing in Rule 23 expressly requires the Court to analyze ascertainability. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012)); *Eager v. Credit Bureau Collection Servs., Inc.*, Nos. 1:13-cv-30, 1:13-cv-84, 1:13-cv-173, 1:13-cv-261, 2014 WL 3534949, at *3 (W.D. Mich. July 16, 2014) (citing *Stinson v. City of New York*, 282 F.R.D. 360, 373 (S.D.N.Y. 2012)). "Ascertainability is either an 'implied requirement' of Rule 23, *see Eager*, [2014 WL 3534949, at *3], or an inherent requirement of Article III standing.'" *Sherrod*, 2016 U.S. Dist. LEXIS 179, at *9.

The Court's initial focus is whether "the proposed class definition is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Eager*, 2014 WL 3534949, at *3 (quoting 7A Charles Alan Wright, et al., Federal

Practice and Procedure § 1760 and citing *Young*, 693 F.3d at 537-38).[2]  When a class cannot be

determined without individualized fact-finding, its definition is unsatisfactory.  *Romberio v.

Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) (citing *John v. Nat'l Sec. Fire & Cas.

Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (noting that "[t]he existence of an ascertainable class of

persons to be represented by the proposed class representative is an implied prerequisite of Federal

Rule of Civil Procedure 23"), *Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986)

(explaining that class definition should be based on objective criteria so that class members may be

identified without individualized fact-finding) and 5 James Wm. Moore et al., Moore's Federal

Practice ¶ 23.21[3][c] (3d ed. 2007) (explaining that "[a] class definition is inadequate if a court

must make a determination on the merits of the individual claims to determine whether a particular

person is a member of the class")).

The "fail-safe" class is an aspect of ascertainability.  *Eager*, 2014 WL 3534949, at *4.  "A

fail-safe class 'is defined so that whether a person qualifies as a member depends on whether the

person has a valid claim.'"  *Id.* (quoting *Messner v. Northshore Univ. Health System*, 669 F.3d 802,

825 (7th Cir. 2012)).  "Such classes are improper because '[e]ither the class members win or, by

virtue of losing, they are not in the class and, therefore, not bound by the judgment.'"  *Id.* (quoting

*Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)).  A fail-safe class is

also "unfair to the defendant because 'it prevents an adverse judgment being entered against

---

[2] Recently, the Sixth Circuit used this "administratively feasible" language in *Sandusky Wellness Ctr. LLC v. ASD Speciality Healthcare, Inc.*, No. 16-3741, 2017 WL 2953039, at *8-10 (6th Cir. July 11, 2017), but noted that courts have categorized class member identity concerns differently within Rule 23's framework, so it "[saw] no need to add [its] own opinion to this debate."  *Id.* at *10 (collecting cases).  The court noted that "Rule 23(b)(3) classes must also meet an implied ascertainability requirement."  *Id.* at *4 (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)).

plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability.'" *Id.* (quoting *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012)).

Defendants argue that, as a matter of law, Plaintiffs' proposed class is not ascertainable because it is not administratively feasible to determine who purchased but did not receive preservation mounting and/or archival tape mounting from Michaels. Class member determinations would require individualized fact-finding after review of proposed class member and employee testimony, contracts, receipts, and a physical assessment of each piece of framed artwork.

Plaintiffs assert that, through discovery, they will be able to identify class members. Plaintiffs contend that, without discovery, they cannot adequately address the information in Defendants' possession, including purchase and shipment records, sales and inventory data, and other company files. Plaintiffs rely on *Young* and *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015), to argue that "additional, even substantial review of files" does not defeat class certification. *Young*, 693 F.3d at 540; *Rikos*, 799 F.3d at 525. But this argument ignores how the Court would determine whether the purchasers of preservation mounting actually received preservation mounting. Such determination is not administratively feasible because it would require removing the framing from the artwork of all customers who purchased preservation mounting or archival tape mounting.

Plaintiffs argue that if a customer received preservation mounting, then he or she would not be a class member and would not have a claim; the existence of people who do not qualify for class membership does not make class certification impossible. Plaintiffs equate this to a class action for iPhone users, arguing that there is no fail-safe problem when someone has a phone other than an iPhone because they would not be included in the class. But the proposed class is not just customers

9

who ordered preservation mounting.  Rather, the proposed class is anyone who paid for preservation mounting *and* did not receive preservation mounting; it includes only the customers that Plaintiffs claim are entitled to relief.  As such, it is an improper fail-safe class.  *See Randleman*, 646 F.3d at 352 (explaining that a class defined by customers entitled to special rates for title insurance and who paid more such insurance was an improper fail-safe class); *see also Sherrod*, 2016 U.S. Dist. LEXIS 179, at *9 (class composed of consumers who cancelled software subscription but were charged for renewal was an improper fail-safe class); *Boyer*, 306 F.R.D. at 540 (class of people who did not provide prior express consent to be contacted by defendants to establish a violation of the law was improper fail-safe class); *Eager*, 2014 WL 3534949, at *5 ("[T]he proposed [a]ssignment [c]lass is an improper fail safe class.  An individual falls within the class only if the assignment allegation in the particular state-court complaint was false, i.e. no assignment existed.").

The Court sees no way in which the proposed class can be modified to avoid the fail-safe problem.  Plaintiffs do not offer a viable solution; and they do not explain how discovery would resolve this problem.  Indeed, removing the requirement that a member did not receive preservation mounting would remedy the fail-safe problem.  But it would also render the class over-inclusive: it would include all individuals who purchased preservation mounting, even if they received such mounting.  *See Eager*, 2014 WL 3534949, at *5.

## B. Typicality

Likewise, problems with class definition carry over into problems with typicality.  *Romberio*, 385 F. App'x at 431.  "'The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.'"  *Id.* (quoting *Sprague v. Gen. Motors Corp.* 133 F.3d 388, 399 (6th Cir. 1998)).  There must be some connection, in other words, between the

merits of each individual claim and the conduct affecting the class; without such connection, there is no basis upon which to fashion class-wide relief. *Id.* "[T]he typicality requirement is not satisfied when a plaintiff can prove his own claim but not 'necessarily have proved anybody's (sic) else's claim.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Sprague*, 133 F.3d at 399). "[A] representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Id.* (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976)).

"The test for typicality . . . is not demanding[.]" *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. July 30, 2001) (quoting *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993)). "Typicality may be presumed when the plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members.'" *Id.* (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). This requirement is satisfied "so long as the plaintiff alleges a common scheme relative to all members of the class." *Galoski v. Stanley Black & Decker, Inc.*, No. 1:14 CV 553, 2014 WL 4064016, at *4 (N.D. Ohio Aug. 14, 2014) (internal citations omitted). "Even so, typicality has been defeated when the plaintiffs' legal theory requires individualized proof, as the name plaintiffs' evidence 'could not advance the interests of the entire [absent] class.'" *In re Nortel Networks Corp. ERISA Litig.*, No. 3:03-md-01537, 2009 WL 3294827, at *6 (M.D. Tenn. Sept. 2, 2009) (quoting *Sprague*, 133 F.3d at 399).

Given the individualized nature of custom-framing services, Defendants argue that Plaintiffs cannot show typicality because proving their own claims will not prove any other proposed class member's claim. Defendants contend that, even if Plaintiffs can prove their own claim with respect to any one of their 25 pieces of art, this would not necessarily prove their claim with respect to any

11

of the remaining pieces.  For example, if Plaintiffs prove that they purchased preservation mounting for the "Ben Harper" print they brought to the Holland store on January 11, 2013 by testifying to the Holland store's signage, their reliance on such signage, employee recommendations and guidance, and the signed contract, this would not prove their claims for any of the remaining 24 pieces—let alone the pieces purchased by other proposed class members.

Plaintiffs argue that their claims are typical of the proposed class; why they paid for the premium product or which sign they saw is irrelevant. But Plaintiffs allege violations of state consumer protection statutes, the Uniform Deceptive Trade Practices Act, the Magnuson-Moss Warranty Act, Michigan's Consumer Protection Act, fraud and misrepresentation, unjust enrichment, negligence, breach of express warranty, and breach of implied warranty.  (ECF No. 10). The merits of these claims depend on, *inter alia,* the signage at the store where the proposed class member purchased the preservation mounting, their reliance on such signage, conversations with employees, and the signed contracts.

In the amended complaint, Plaintiffs do not allege a common scheme relative to all members of the class. Plaintiffs cite to advertisements on Michaels' website, but do not allege that they saw or relied upon those online advertisements.  Rather, Plaintiffs assert that they relied upon statements from employees and in-store pamphlets.  (Am. Compl. ¶ 33, ECF No. 10, PageID.69-70.)  Plaintiffs argue that the claims arise from Defendants' uniform course of conduct as it relates to the improper use of inferior adhesive tape, not on the custom nature of the framing services provided.  But here, "proof [of Plaintiffs'] individual claims would not necessarily prove those of the class members." *Eager*, 2014 WL 3534949, at *6.   Further, to assess the merits of the proposed class members' claims, the Court would need to conduct a "separate, fact-specific inquiry in each case." *Id.*

12

### C. Commonality

Plaintiffs face similar problems with respect to commonality.  To satisfy Rule 23(a)(2)'s commonality requirement, Plaintiffs must show that "there are questions of law or fact common to the issue."  Fed. R. Civ. P. 23(a)(2).   The common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "Although Rule 23(a)(2) speaks of 'questions' in the plural, [the Sixth Circuit has] said that there need only be one question common to the class."  *Sprague*, 133 F.3d at 397 (citing *Am. Med. Sys.*, 75 F.3d at 1080).  "It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality."  *Id.*  The Court must look for "a common issue the resolution of which will advance the litigation."  *Id.*  It must "assess 'the legal or factual questions that qualify each class member's case as a genuine controversy,' [*Amchem Prods.*, 521 U.S. at 623], and assess whether those questions are 'subject to generalized proof, and thus applicable to the class as a whole,' *Bridging Cmtys., Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016)[.]" *Sandusky Wellness Ctr.*, 2017 WL 2953039, at *6.  In other words, when a claim depends "upon facts and circumstances peculiar to that plaintiff," *Sprague*, 133 F.3d at 398, the claim lacks commonality.

The amended complaint alleges that several common factual questions predominate over individual questions, including questions of Defendants' representations, omissions, warranties, advertisements, duties, fraudulent inducement, training, harm, damages, and fraud.  (Am. Compl. ¶ 60, ECF No. 10, PageID.75-77.)  Plaintiffs' typicality and commonality theory have the same flaw: their general hypothesis is not subject to common proof.  As discussed *supra*, if Plaintiffs prove one

13

of their claims regarding a piece of artwork, that would not necessarily prove their 24 remaining claims, let alone anyone else's in the proposed class. *Id.* The individualized fact-finding required to resolve Plaintiffs' dispute "would not resolve factual issues for any other class members; instead, similar facts particular to each individual would have to be presented again and again, making this case not amenable to class treatment." *Sherrod*, 2016 U.S. Dist. LEXIS 179, at *15-16.; *see also Sprague*, 133 F.3d at 398 ("Given these myriad variations, it seems to us that the plaintiffs' claims clearly lacked commonality.").

### D. Predominance

This individualized fact-finding also strains Plaintiffs' predominance theory. Under Rule 23(b), the Court must find that common questions predominate. Fed. R. Civ. P. 23(b)(3). To satisfy this requirement, the Court must find that the "issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman*, 646 F.3d at 352-53 (citing *Beattie*, 511 F.3d at 556). "'The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Beattie*, 511 F.3d at 564 (quoting *Amchem Prod.*, 531 U.S. at 632 and citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)).

Even if Plaintiffs could satisfy the commonality requirement, any common questions of fact or law would not predominate over questions affecting individual class members. As discussed *supra*, the Court would have to engage in a highly-individualized inquiry to determine whether proposed class members purchased and actually received preservation or archival tape mounting. Each claim would depend on a specific, case-by-case analysis. Further, with respect to Plaintiffs' proposed nationwide class, the applicable state laws would vary substantially. *See Pilgrim*, 660 F.3d

at 948 (noting the Sixth Circuit has "refused to allow a nationwide class covered by the laws of different States"); *see also Drooger v. Carlisle Tire & Wheel Co.*, No. 1:05-cv-73, 2006 U.S. Dist. LEXIS 20823, at *31 (W.D. Mich. Apr. 18, 2006) ("The great weight of authority observes that when class claims cannot be brought under a unifying law, predominating questions of law are absent, and certification is inappropriate.") (collecting cases).  Thus, the predominance requirement is not met, especially for Plaintiffs' proposed nationwide class.  *See, e.g., Randleman*, 646 F.3d at 355 (denial of class certification based on lack of predominance affirmed where "each homeowner's entitlement to the discount rate turns on an individual case-by-case analysis"); *Eager*, 2014 WL 3534949, at *4 (predominance requirement not met where "the Court would be required to make fact-specific inquiries as to each class member to determine [the merits of the claim]"); *Stalker v. MBS Direct, LLC*, No. 10-11355, 2012 U.S. Dist. LEXIS 179793, at *21 (E.D. Mich. Dec. 20, 2012) (predominance lacking where issues raised "are inapplicable to the class as a whole because, varying from member to member, the issues are not subject to generalized proof").

## IV.

In sum, Plaintiffs' proposed class is a fail-safe class: it includes only those customers that Plaintiffs claim are entitled to relief.  Although Plaintiffs have not yet moved for class certification and no discovery has taken place, the Court sees no way in which the proposed class can be modified to avoid this problem.  Moreover, the proposed class also fails to satisfy the typicality, commonality, and predominance requirements of Rule 23.  Given the individualized nature of the claims, the Court does not believe that discovery will resolve these failures.  Thus, the Court will grant Defendants' motion to strike the class allegations.

15

An order will enter in accordance with this opinion.


DATE: <u>July 19, 2017</u>                    <u>/s/ Paul L. Maloney</u>
                                        Paul L. Maloney
                                        United States District Court Judge